ACCEPTED
01-14-00641-cr
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/21/2015 2:48:54 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00641-CR

In the
**COURT OF APPEALS**
For the
**FIRST SUPREME JUDICIAL DISTRICT**
at Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/21/2015 2:48:54 PM
CHRISTOPHER A. PRINE
Clerk

———————————————————

On Appeal from the 434th District Court of
Fort Bend County, Texas
Cause Number 11-DCR-056513

———————————————————

**CORNELIUS MILAN HARPER, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

———————————————————

**APPELLANT'S MOTION TO ABATE PROCEEDINGS FOR
CORRECTED REPORTER'S RECORD
AND MOTION FOR EXTENSION OF TIME**

———————————————————

TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:

COMES NOW, Cornelius Milan Harper, Appellant herein, by and through his attorney of record, Kristen Jernigan, and files this, his Motion to Abate Proceedings for Corrected Reporter's Record and Motion for Extension of Time. In support of said motion, Appellant would show the Court the following:

1.     Appellant's brief is due in this case on August 5, 2015.

2.     Appellant seeks an abatement and extension of time because multiple volumes of the Reporter's Record are unintelligible.

3.     The undersigned sent an initial written request to the Clerk of the Court for the Clerk's Record and the Reporter's Record.   The Clerk of the Court mailed the undersigned a disk with that record.   The Clerk's Record in this case is 1,034 pages and the Reporter's Record purportedly consists of seventy-one volumes.

4.     In reviewing the Reporter's Record in preparation of drafting Appellant's brief, the undersigned discovered that fifteen volumes of the Reporter's Record were missing.

5.     The undersigned informed the Court of the incomplete record and the Court ordered the Court Reporter to file the additional volumes.

6.     The Court Reporter filed the fifteen additional volumes on July 5, 2015.   Once notified, the undersigned sent an additional request for the complete record in this case.   The undersigned received the record by mail on July 20, 2015.

7.     On today's date, July 21, 2015, the undersigned began reading the fifteen additional volumes[1] and discovered that virtually all of the volumes are unintelligible.   In several volumes, the speakers are not identified and there are indications that the Court Reporter could not or did not transcribe portions of the proceedings.   Some examples are the following:

From Volume 28:

"THE COURT: All right. Let's bring in
Jane dawn. ^^
THE BAILIFF: She's not here yet, Judge.
THE COURT: Okay. ^^ Nickels arbans
county?"    (RR28: 5).

From Volume 37:

"MR. HANNA: There's four on there. And
when you were walking in Katherine and I -- she wanted

---

[1]   The undersigned has already read and reviewed the other 56 volumes in this case and has been waiting on the additional fifteen volumes to continue drafting the brief in this case.

to talk to me one of the things we discussed yesterday about the date and time in which we are having the entire panel come back. And whether or not weave and to make plans.

THE COURT: Well, I was hoping to have them come back on wed morning. I think that's addable day but I Vice President consulted with you all."   (RR37: 3).

"MR. HANNA: I see dog dog I agree with everything is that mark said just now booted things, you know, the defense is going to ask for some more strikes. I don't know if you're going to give them or not but when we get to the end preemptories if you were two extra or three, that would effect.

THE COURT: I had that in the process dog dog that's in your call couldlations.

SPEAKER TWO: All right so is everybody in agreement that we definitely work Monday and at least maybe Tuesday if we have to and then come in for the jury process on wed."   (RR37: 5).

From Volume 38:

"THE COURT: Okay let's bring in 186 lessees toss. And while you're out there you can tell 97, yes, sire willsen that he's excused and thanagesy willsen and give he or she an excuse.   (RR38: 5).

THE COURT: They won't be mad there not going to trio change your mind r.

SPEAKER TWO: Juror okay.

THE COURT: This is a really unusually that has been levied. Because normally and have an opportunity to answer a Bufferin of questions for an

hour of so."    (RR38: 7).


From Volume 44:

"MR. HANNA: Location to be did remembered
by defense fill fill by the defendant didn't want went
of the objections.

MR. HANNA: When I said it's all
admissible without once it's if it's missing is he
wanted to encourage or wanted to preserve the pretrial
motions to the admissibility of the evidence and whether
or not annona had the authority to consent things that I
don't know they can argue without physically having it's
a constitutionally law enforcement violation kind of
issue."    (RR44: 4-5).


"THE COURT: Okay Mr. Han that is is that
right between what you stated and Mr. Doubt where this
could take place and a that the state will have it
admitted before it leaves the courtroom.

MR. HANNA: Correct and so that we all not
condition maybe admit it referred in argument if it is a
piece of evidence for consideration.

MR. DOGGETT: It will be committed all
though addition that we immediate previously and that
were ruled on."    (RR44: 7).


From Volume 51:

"SPEAKER ONE: I'm not aware of a separate
Wac for a cap cap from any other case. So these that
the rules should be different or that the just because
of the charge in this case are completely the rules are
the rules and they are the same in every case yes it
does provide inessential for the state of mind that it

be a statement that relates state of mind at the time and it also requires that that deck be recommend vaunt and her Ms. Tartans in July and August of 2010 in relation to bickering with her brother is not relevant in this case. If the State that they had a hungy doe for the defense would be to ask her were they're times and if she denies that then bring in something to impeach her. That does not require heritage of a members of the jury she denies.
She hadn't even hadthat opportunity at this point. The brief that the defense 8033 I do want to point out to the Court that all of the cases sided are cases that statement of a victim in a murder to someone else about their state of mind involving the defendant in those cases things like I'm wored about this person hurting me which are completely sure in a state of mind regarding beliefs about the allege are very relevant here they're not real which is part of 80 approximate three and so because of that limit ask questions impeach her with actual which is not what they have done so far.

THE COURT: All right. I'm not going to let the statements in underle 8033. I will allow them to be used to impeach inproperty circumstances. So that's my ruling. Are y'all ruddy to go forward.

SPEAKER TWO: Their glass.

THE COURT: Yes.

SPEAKER TWO: They says that he would like to come talk to corn on Monday morning and he could probably be through with him by noon and he would be here no later than 9:30 perhaps we could release the jury for a half of day and tell them to report at 1:30 to tell him that yes you said okay with all this and that the day on which we decide to do the hearing and I told him I would get back with him sometimes today."
(RR51: 7-8).

From Volume 57:

"MR. FELCMAN: I'm asking you to deny that judge,none of them are separate offenses, they are all the same way of committing the very same offenses alleged in the paragraphs. Therefore, I am asking you to denyCAN'T GET THE WORD AFTER DENY."   (RR57: 15).

"MS. BOLIN: And it be collected by the it's not admitted and not to go back probably even nonnish as an aid to them."   (RR57: 20).

"MR. DOGGETT: Well, we object and we think it violates the 6th amendment right to confront and cross-examine and it's just somebodies opinion I have a 403 objection that these are alternate opinions about what two different people hear, just two different opinions about what they hear on the tape. It's inappropriate the jury can decide what they hear on the tape not what they can hear on the tape so estrin you I don't feel object we and ask that you not allow it."   (RR57: 71).

From Volume 58:

"THE COURT: If you would please hand that to my bailiff. All right. We the jury do herby fine the defendant guilty of the offense of cap cap as charged in the indictment signed by the foreman. Do you wish to have the jury poled."   (RR58: 4).

"MR. DOGGETT: We have one witness here.^^^CHECK SPEAKER

MR. HANNA: That you put on.

MR. DOGGETT: If you're willing to put them out of order, we will let them do that.

MS. BOLIN: Should we do that tomorrow.

MR. HANNA: Tomorrow or Friday well no we are not looking^^^CANT HEAR OVER THE DOOR

MS. SCARDINO: Will y'all be finished, if you can get ever body here, will you be finished by the end of the day Thursday.

MR. HANNA: Our estimate was two full days of testimony so that would put us, today is Wednesday so that would put us till Friday afternoon.

MS. SCARDINO: Okay. ^^^CHECK SPEAKER" (RR58: 9).


"Start. Rachel, this is the first day of punishment. #.

THE COURT: Mr. Hanna, are you going to give an opening statement?

SPEAKER ONE: Judge I don't think I need more than 10.

SPEAKER TWO: Yes short.

THE COURT: That's fine."    (RR58: 12).


From Volume 59:

"Q. What were you doing the first time you became involved in an innovation innovation?

A. I of 28 pun north six, and officer ginningens another officer in our juvenile conviction as the school resource officer. He contacted me on the radio and wanted me to come pack to with about a student.

Q. And what did you do as a result of that contact?

A. I met with ginningens he tolt me there had been some pres with Mr. Harper and he called me back to the office area. We're walking up to the front by a for instance pal who said Cornelius had been on the stress passing list." (RR59: 7).

"Q. What was his tone of voice like?

A. His tone of voice was serious and our.bitch Ass hoes and apples threated and asews to be of the printery bull." (RR59: 11).

8. Appellant respectfully requests that this case be abated so that the Court Reporter can correct the fifteen volumes submitted after the filing deadline had already passed.

9. The undersigned has spoken with trial counsel who has indicated his willingness to review the corrected record and compare it with his notes from trial to verify whether the corrected record is in fact, true and correct. This is necessary because there are serious questions about the Court Reporter's ability to correct the record given her notations that she is unable to determine who a speaker was or what was said.

10. For the reasons set forth above, Appellant respectfully requests that the deadline for filing Appellant's brief will be reset until sixty days after the complete Reporter's Record in this case is filed so that the undersigned can review the corrected record, confer with trial counsel and draft the remaining portions of Appellant's brief. Tex. R. App. P. 38.6(a)(2).

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Appellant respectfully requests that this Court grant his Motion to Abate for Corrected Reporter's Record and Motion for Extension of Time.

Respectfully submitted,

_____/s/__Kristen Jernigan_____
KRISTEN JERNIGAN
State Bar Number 90001898
207 S. Austin Ave.
Georgetown, Texas 78626
(512) 904-0123
(512) 931-3650 (fax)
Kristen@txcrimapp.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Appellant's Motion for Extension of Time has been mailed to the Fort Bend County District Attorney's Office, 301 Jackson Street, Richmond, Texas 77469, on July 21, 2015.

__/s/ Kristen Jernigan_____
Kristen Jernigan